Company, et al. Argument no. C-50, Mr. Todd. Mr. Clement, you may proceed, please. Thank you. Good afternoon, Your Honors, and may it please the Court, Paul Clement for the appellants. We believe that there is only one issue properly before this Court on this case. We believe that the district court here erred in concluding that source state common law claims generally, and the specific state law claims at issue here specifically, are not preempted by the Clean Air Act and its carefully structured regulatory regime. Now, the district court's preemption analysis in this case is quite cursory, but it appears to adopt the view that source state common law claims are categorically not preempted. And with all due respect to the district court, we believe that that principle cannot be squared with the Supreme Court's decision in international paper and AEP, and it also squarely conflicts, of course, with the well-reasoned opinion of Judge Wilkinson in the TVA case in the Fourth Circuit. Now, I think it's important to start with the international paper, the Wallett case. How does it compete with the Fourth Circuit? You're talking about the Cooper v. TVA case. Why is there a conflict between the argument related to source, source plaintiffs, source defendants, source state law? Well, there's a conflict, Judge Strange, because although I think the plaintiffs have characterized it differently, if you look at the Fourth Circuit's decision, it's quite clear that the district court in that case applied source state law. So the district court in that case was not unaware of the international paper case. And so the district court in that case did not apply North Carolina law to sources in Alabama and Tennessee. Rather, the district court there applied Alabama and Tennessee law, albeit at the behest of the North Carolina attorney general, in ways that the district court thought was perfectly consistent with the statutory regime. And the Fourth Circuit in that case rejected the analysis of the district court on multiple levels. And at one point, one of the arguments is they feel like they — that in essence, the district court ended up applying North Carolina extra-territorially, North Carolina law extra-territorially. But that's not what — that's not the holding of the case, and it really is not — it's not a matter of simply saying, well, what was going on there was the application of non-source state law. To the contrary, the district court opinion, and I'd recommend taking a look at it if you're interested in the Fourth Circuit case in particular, the district court case there could not have been clearer that it was applying source state law, Alabama law, Tennessee law. So I think the starting point for the analysis, in our view, is that it's wrong to apply a categorical rule that just because you're applying source state law, somehow the claims are necessarily not granted. And I think the clear teaching of — Can't you see a distinction, though, practically, and the — based on the purpose of the CAA, that would distinguish the use of source state law against source parties as opposed to the interstate application of one State's law to another State's emitter? Well, Judge Franch, I think there is a big difference. There is a big difference. There is a big difference. But the biggest difference is we know from international paper that if you're applying non-source State law, that's categorically preempted. That's the holding. But the problem is, I think the district court here almost applied a corollary that if it's source State law, it's categorically not preempted. And that's wrong, and it's inconsistent with the international paper case itself, because if you look particularly at footnote 20, the Supreme Court there said even when you're applying source State law, ordinary conflict principles apply. Now, if I could suggest the real reason why non-source State law and source State law are different for these purposes, it's also suggested by international paper itself, because what the Court said there, albeit somewhat breezily, the Court there said that the source State nuisance law can be incorporated in the permitting process. And I think the real difference between source State law and non-source State law is it's the source State that does the permitting. And so the source State can take into account its own law when it crafts the permit conditions. And yet cannot take into account its own State law in protecting the rights of its own citizens? Of course it can, Your Honor, but it does it through the permitting process. And only? Under your argument, only? No, principally. And I think that to understand our position, I mean, it's really the primacy of the regulatory process. Could I ask a question about how your argument relates to the one that we just heard? You say that this is the only argument before us to understand that jurisdictional argument. Is that argument — there's no difference in the — the nuisance may be different, but the bottom line is the same in both arguments. Is that correct? I mean, if — if we rule one way for one of these parties, we have to rule the same way for the other of these two parties? Or is there some difference between these two — two cases? I think there is a difference, Judge Rogers, and it's this. I think the starting point for deciding both these cases is in both cases, as I read the district court decisions, they incorrectly applied a rule that effectively says if it's source State law, it can't be preempted. And that's wrong. But then there's the second question, which is, okay, if, as the Supreme Court said in footnote 20 of international paper, ordinary conflict principles apply when you're applying source State law, then I think the application of conflict principles are different in the two cases, and partially that's because of just the procedural histories of the cases. What we have in this case, which I think — Well, I want to — I'm curious about the difference in the legal conclusion that we're coming to. You're saying that we might look at the procedures here differently and come to different conclusions on whether there's preemption of Kentucky-made nuisance law in one case versus the other? What's the difference? I think the difference here is that this is a particularly — I think ultimately you — you probably want to come to the conclusion. Why would we not come to the same conclusion is my question. Is there some way in which one of them would be preempted and the other one wouldn't somehow? Well — I'm assuming you would say yours was. Yes, and I'm — And there's — My friend from the first case would say the opposite. Right, right, right. Here's what's, I think, critically different. Here you have the same complaints, the same concerns that are reflected in the complaint here were before the Board and were the subject of resolution in the agreed-upon Board order. Oh, I see. And in the first case, you didn't get to that point. And if you look at the — There might be a way, if we ruled in your favor, there might be some way in which the other case would be distinguished, I guess is what you're saying. That's right. It's pretty close, though. The issues are pretty overlapping. I'm wondering if your answer to my question about what the State could do is different from the answer that's — do you have a different view for how you read this language here, which says the State can adopt or enforce standards or limitations respecting emissions? Some would read a tort standard as setting such a standard or limitation. I took the counsel that was more or less on your side in the previous case to be saying, in the end, a lot had to do with whether it happened later rather than before. Is that the distinction?  What is the distinction, then? Because I'm having trouble with it, to be candid. I'm having trouble seeing what the distinction is. And I don't think that there is necessarily a bright-line distinction between tort law and more positive law. I think the difference is in understanding how to put together international paper and AEP. Can you do it without citing cases? Just do it in terms of the language of the statute? The statute — virtually every provision of the statute gives primacy to the regulatory process and the permitting process. Well, it does in the sense that — I don't know what you mean by primacy. You have to comply with it first, and nothing will take away from your obligation to comply with it, but that's not the same thing as saying you don't have to comply with something else. It can be very thorough, subject to very great limits, subject to public input. In concept, it could also have this other obligation be imposed on you. Or all of this stuff that you rely on could be read as being so burdensome or so onerous or so focused or so primary that nothing else should be looked at. Those are two ways in which — but just to amplify how elaborate one scheme is doesn't inherently say that the other one doesn't simultaneously apply. It just doesn't logically follow, does it? Well, I understand that, Your Honor, but I don't think it has to be an all-or-nothing proposition. Well, then you've got to draw the line. Sure. And I'm trying to do that for you, but it does get to the primacy of the regulatory scheme. It's one thing — Let me understand if the primacy of the regulatory scheme is the be-all and end-all of this case. Why do the purposes and findings that introduce this Act say the air pollution prevention, that is, the reduction or elimination through any measures of the amount of pollutants produced or created at the source, and air pollution control at its source is the primary responsibility of the States and local governments? Absolutely. Which is why — Well, help me understand. You've just told me that the primacy is in the Federal regulatory world, and it seems to me that the statute itself says the primacy for this enforcement and this activity and the protection of the citizens of each State through the police power is the responsibility of the State. With all due respect, Your Honor, I don't believe I said it's the Federal regulatory process. It is the cooperative Federalism process that in a case like this actually has the Board in Louisville making the decisions, the regulatory decisions, as an exercise of its essentially delegated Federal power under the Clean Air Act. So the remedy here, if you look at the complaint in this case and you look at the briefing in this case, you cannot help but conclude that my friends on the other side just don't like the way the Board resolved this particular dispute. They think there should be a greater remedy available in these circumstances. And the remedy for that would have been Louisville. I'm sorry. Are you saying there is no remedy for plaintiffs in this case except to go back to the local government and say raise your standards or something like that? That is what I'm saying as applied in the facts of this case, Judge Sala. Their remedy was, if they didn't like the way that the Board resolved these complaints, their remedy was to go to and file an appeal in the State administrative process and get that remedy fixed. And if you look at it. I think I understand the answer to that question, but I'm still not getting an answer to my question. Let's say that the State by statute sets up an administrative agency and gives it a very general standard that providers have to comply with, and then tells the agency to go forth and apply that standard. And where appropriate, come up with a, and where appropriate, to interpret that standard as requiring more than the Clean Air Act requires to go ahead and do that. Would that be inconsistent with the Savings Act? I don't think it would. And the reason is. All right. That's okay. What if the standard is just as general as creates a nuisance? So they create a statute that says we don't want people in the State of Kentucky, this is hypothetical now, we don't want people in Kentucky to have nuisances, so we're going to set up an agency which is going to, after the fact, determine whether a nuisance was found and provide for remedies if they, as long as, even if it exceeds what the Federal requires. That would be okay, too, right? Or not? Well, I think it might be, but the key is when the State, let me take your first example, okay? When the State decides that the agency is going to come up with standards for nuisance, presumably it's the same agency that's going to ultimately be involved in promulgating the permits. That's not right. Why should that be? You're saying that they can't be. You mean the only way that they can act is through the CAA? Is that the Clean Air Act? They can't independently set up a different agency? I don't think they can set up an agency that's whole purpose is to conflict with the Clean Air Act. Not talking about, when you say conflict, with all respect, you're introducing the answer to your question. It's not a conflict if it's something that's stronger, stricter. That's not a conflict in this sense, unless you define it that way. Well, Judge Rogers, I think maybe we're talking past each other because you're thinking that the only conflict that can happen is a procedural, rather a substantive conflict. But you can have a procedural conflict that, well, who's second? I don't see how. How? Because if you have a process, as the Clean Air Act is, that is clearly designed to have regulators make these decisions, then something that allows collateral attacks left and right in another forum. It's not a collateral attack if it's just a – what if they just don't like – what is it? You're not the Whiskey Edge case, are you, Your Honor? No, we're not. We're not Whiskey. We're trying to comply with the Clean Air Act, and we are trying to treat our facility and in the process of doing that – What's the stuff that you're producing? We're producing energy, Your Honor. All right. What's the stuff that you're pumping into the air? A coal ash residue, correct? Well, yes, but it's particularly the residue from the treatment process in order to comply with the Clean Air Act. Okay. What if Kentucky comes up with a specialized residue from the treatment process act? It's not a Clean Air Act, except it happens to overlap some of the – some of the requirements and some of those requirements, and they create – but all they do is say that the standard that they set is just a very straight, very simple one-word standard. And then they create an agency or give it to the courts. I'm wondering if that makes a difference, and say apply this standard and apply it retroactively. These people need to anticipate what we're going to do. That's – you know, that's the way the NLRB is set up, isn't it? I mean, they just – one or two words, and then the NLRA has to go out and make a whole – and then the NLRB has to go out and make a whole lot of case-by-case determinations, which become the law of labor law. I mean, that's the way some agencies work. Could they do that, or could they not do that? It would depend on how it operated in practice. I don't have an a priori answer, because if you adopted that same – It seems to me if you don't have a clear answer why that – its own concept is not preemption, then I don't understand how this is not preemption, because it seems pretty close to that. It's not that I don't have a clear answer, with all due respect, Your Honor, it's I don't have an a priori answer, which is it depends how they operate in practice. What is the – what is the practice difference, then? You're still taking a very general standard, and it's still hard for regulated parties to anticipate, but that's the way court law works, and it's the way some administrative law works, and it – in effect, the system creates a new standard, and you – and it's a – every time they – every time there's an adjudication, the standard gets refined, and that's the way the law is made. That's a recognized way of making law, both in the state and federal, administrative, and common law schemes. If you're saying that none of that can be done under this savings clause, then you haven't saved much. And if you're saying some of it can be done and some can't, then I'm wondering what – where you're drawing the line, and just saying it can't be done a priori is – it doesn't really answer the question. The question is ultimately answered by applying conflict preemption principles in determining whether or not the scheme conflicts with the scheme created by the Clean Air Act. Now, if you had two agencies operating completely independent from each other, I think that would pose the same conflict. How is that a conflict if one of them is only tasked with coming up with a standard that might or might not be higher than the federal standard for a particular kind of pollutant? Let's say, you know, you can use – you can use different experts. You can use – you can take lay witnesses, I don't know, whatever their standard is, to come up with 42 parts per million instead of 40 parts per million. Why isn't that preserved here? I don't think it's preserved because – and I think I can hear you. Because of the processes you go through to come up with 42 parts per million? I think ultimately that's the answer. And I would take you back to the international paper case, because if you look at the international paper case, if you read it the first time, you might think it's a little bit of a puzzle, because first the Supreme Court in Justice Powell deals with the common law of Vermont. And it says, oh, this is hopelessly vague and this would completely interfere with the permanent process. Then it turns around, and what I think is dictum, but doesn't matter, starts talking about New York nuisance law, which is every bit as vague, and he says this doesn't pose a conflict. And the reason I would submit that that is logical and the reason that my answers to you are logical is what the Court says there briefly, which is the difference is New York can take its nuisance law into account in the permitting process. And then if you take a step back and look at the whole way this regime is supposed to work, it does funnel citizen complaints to the agency for the agency to make the determination in the first instance. If the agency looks at a situation and says, boy, this is problematic. For example, we're going to bring an enforcement action. Then you have the agency there explaining exactly what the consistent view of the Clean Air Act is, and you might have the ability of that person to intervene. You might even have the possibility of a tort suit in that case, which is, I think, exactly what happened in the Ellis case from this Court, where you ultimately had a very narrow nuisance claim that went forward, consistent with the Savings Clause, but it did it only after a violation of a standard set principally by the regulators in a consent order in that case. That's an issue. I see your time is up. I've let you go way beyond your time, so I think. You have, Your Honor.  Thank you. Thank you. May it please the Court. Steve Berman on behalf of the plaintiffs. It's our position, Your Honor, that the Clean Air Act, to use the words of the Supreme Court in the Exxon shipping case, did not sub silentio preempt the right of people to bring common law claims when they have been injured, as they have in this case, by the depositing of coal dust in their homes and outside on their yards. But there's one thing that I wish to really focus on at the start that makes this case a little bit different. There's really no conflict here. They – the other side talks about, well, you're second-guessing the board's decision. You would expose us to a horrible parade of a lack of uniformity. But this suit is based on a violation of the APD regulations. All we're seeking to do is to recover damages, because the permit, for example, APCD regulation 1.14 – Are you talking about the issue that we've been arguing about all along, or are you talking about some of these other issues now? No, I'm talking about the preemption issue. And the point I'm trying to make is – I thought the preemption issue had to do with nuisance law. Well, but we're – we're saying – And how are you saying you're enforcing the Clean Air Act? Well, what we're saying is we're suing in part under nuisance law because there was a violation of the agency's regulations. The agency said in 1.14 that you cannot allow emissions beyond the Kane-Munn property line, and in 1.09 says that you can't create a nuisance. So the agency has adopted a regulation. It seems to me that undercuts your argument. Well, I think it helps. If you start saying that what you're trying to do is come up with a different way to enforce the statute, then that does look inconsistent with the procedures that the statute sets up for enforcement. My point is that we're not subjecting the defendant in this case to any inconsistent regulation or lack of uniformity. We're simply suing them for damages because they failed to comply with the agency regulation. And their whole argument about preemption is in part that you have to have a uniformity of Federal and State law and regulation, and we're saying this is uniform. We're just asking you not to have polluted in violation of your permit, and once you did so, we think the law is clear under the savings clause that I'm not going to repeat and under the authorities. Well, the savings clause deals with additional standards and limitations. You're just talking about additional remedies now. Well, it's the same standard. Now you're reading something into the statute when before you didn't have to. It seems like you're making a more difficult argument than you need to make. Well, I'm trying to respond to the point that in terms of standards that a defendant has to comply with, we're not introducing a new standard. We're introducing the same standard. You're saying that the failure of the opponents, LG&E, to comply with the Clean Air Act gives you the cause of action plus? Well, it's part of our nuisance claim, right, because the statute, the regulation says don't create a nuisance, so we're bringing a common law nuisance claim. So you're not relying on the savings statute? I do rely on the savings statute. It doesn't seem to apply to what you're talking about. Well, I think it applies to the argument. Well, it says standards or limitations. That sounds like the number of pollutants per million, not whether you get money or not. Well, I think that the, again, in terms of authorities, the Exxon shipping case, the Ouellette case all make it clear that it was not the intent of Congress to do away with private damage cases. And, in fact, no one has mentioned that the test of whether or not there's preemption is whether there is a clear and manifest purpose of Congress to preempt an area. And the Court in Ouellette and this Court in Her Majesty and the Court in the Bell case, which we would cite to the Court as the most persuasive case to date, all have said there was no manifest intent to do away with private damage cases. And absent that, we don't think that there is a case here for preemption. And that's my basic argument today. And I know I haven't used my time, but I think you've heard enough, unless I have questions. Thank you. Your opponent says that this international paper or Ouellette case, however you pronounce it, is really not applicable here for your cause of action. Tell us why it is. Well, the Ouellette case, which they try to distinguish, is applicable because every case that has looked at Ouellette, including this Court in Her Majesty, has noted that there's no difference, no substantive difference between the Clean Air Act and the Clean Water Act. And, therefore, we would argue that that's a persuasive reading of the statutes. And in terms of the other case that he cites, the AEP case, I would distinguish that case in the following way. In the AEP case, you have plaintiffs who are seeking to set up their own carbon dioxide emission standard. And here, we're not seeking to set up our own standard. We're just seeking damages under State law that were caused by the defendant's violation of State law. So we're seeking a traditional remedy. We're not trying to make ourselves the regulator, as the plaintiffs were trying to do in the AEP case. The way you describe it now, you're just changing the enforcement scheme. I'm not sure I agree. You're not creating a new standard. You're not preserving the right to create a stricter standard for emission. You just want to argue that there have been violations of the permits. Well, the point I was trying to make on that is I don't have to make a stricter standard. We don't have to get there because there already is a standard that they violated. So the whole argument about whether we're going to be imposing a stricter standard really is not applicable in this case. Well, if we apply this, if we apply this savings clause that would permit that, we have to be concerned about what the effects are of our decisions. And the effects, those concerns were addressed by the Ouellette Court and the Bell Court. They recognized that there is a tension between allowing private suits to go forward, but looking at congressional intent, they came to the conclusion that that tension is balanced and preserved if you apply the law of one source State. And the balance is lost when you go to, like, the North Carolina case and you're trying to apply the laws of many different States in kind of a morass of different impositions of different laws on a defendant. And that's not what would happen in this case. Is there any difference? Is there any way a court could resolve this issue that you've all been debating differently from one of these cases that we have here today or from the other? I will admit that I'm not fashionably familiar with the Whiskey case, but it's just based on your reading of the opinion. I assume you've read that. Reading of the opinion, it's my belief that the Ouellette case, Hermann's case. I'm asking if there's any difference. I don't know. You don't know of any difference. They look like the same issue to you. All right. That's all I'm asking. And we rely on the same authorities. All right. That's fine. Thank you, Your Honor. Sometimes we get two cases and they're trying to do something different. You all seem like you're doing something very similar. Further questions? No. Mr. Clement, do you have a little rebuttal? I do, Your Honor. If it may please the Court, let me just make a couple of brief points in rebuttal. First of all, please read the complaint here and don't be misled. There are claims for injunctive relief here, just as there were in AEP. It's not just a damages action. And I think the injunctive claims here show you the conflict in this particular case, because one of the things they asked for in their prayer for relief is to reduce the landfill to its pre-1999 contours. So they are asking for stuff that's more than what they would get under that, under these linear acts. Is that what you're saying? Is that correct? Yes. And it's radically inconsistent with what the Board just did in resolving the exact same complaints, because there the Board heard these exact same NOVs, they looked at it, they imposed a relatively modest civil penalty, and then they adopted essentially a control plan that would put, you know, kind of allows us to continue to operate in a way that will prevent these violations going forward. It is radically different from reducing the landfill to its pre-1999 contours. Could I ask you a question? I'm not sure it goes to your issue, but I'm curious. If we were to rule, I'm not saying we would, if we were to rule that nuisance cases could go forward, would it be more consistent with the Clean Air Act for the Kentucky courts to take into account whether there was compliance with the Clean Air Act as part of its evaluation of whether there was a nuisance or not, or would that be, make less sense? Does my question make sense? It's sort of a convoluted question. No, it does. And maybe another way of coming at the same point is if you had a claim, if this was only a damages claim and Kentucky was going to incorporate essentially the permit conditions as the duty of care for negligence, that would be an example of a tort where you might not have a conflict. I see. But on the other hand, if you have what's at issue here where they want punitive damages, what could be more of a conflict than imposing radically larger punitive damages than the fines, the civil penalties that were imposed by the regulator considering the same conduct, and the injunctive relief of injunctive damages? I take your answer to be that a reasonable State regulator or State court, I guess, that has the power to do common law nuisance, let's assume the statute explicitly allowed it, for instance, then it would make sense, nonetheless, for them to look at whatever efforts were made to comply with this more elaborate scheme. Is that correct? I think that's right. And it really gets to the point I gave you in the principal argument. Right. But I do think the devil's in the details, which is you may be able to construct a common law claim that doesn't present the conflict, but the claim here, I think, does create the conflict. And in all events, the way the district court looked at it, by basically saying once you have source law, you're done. I understand your argument that if a State is going to exercise its police powers, it needs to do it through the creation of the permitting or the permit or the permitting process. But it seems to me that your argument creates more variation in the results that would come out of a particular State in the face of the fact that your argument is that the purpose is to have a lineal provision, a lineal methodology that everyone knows and recognizes and accepts. But the way you've argued it is this, the different case that came before you might in fact not fall into that category. And now we've heard you positing another case that might not in fact fall into that category. How does that fit with your rationale that you have to have continuity of regulatory action? If in fact you've got people opting in and opting out depending upon whether how far you were in the permitting process, whether you were exempt from the permitting process, doesn't that create a greater morass of regulatory work and law than if you had a clear-cut rule that related to the source and the location of the litigants? And my short answer is I don't think it would create the kind of multiplicity and concerns you're talking about, because the practical ---- But yet you've already told me that it would opt out. You would have some that there is no conflict, and you may go forward with your nuisance. Or you may have a case that it was not covered in the permitting process, so now they have their common law remedies. It seems to me that wouldn't the remedy available to the citizen of a State then just depend upon the mere vagaries of where you were in the process or how you exempt yourself from the regulatory world? It wouldn't, Your Honor. And the reason gets back to this idea that I think the way that the regime is supposed to work is the primacy of the regulatory process. So if you have a complaint about a permitted entity, your primary remedy is to complain to the regulators and have them fix the problem. Now, sometimes ---- And then we're back to the ---- and I understand that, and that's an appropriate answer. But then we are back to examining the language of this statute and determining whether its findings and purposes and legislative history would support that argument. Wouldn't you concede that? Of course I would, Your Honor. But I would just caution that all the legislative history that you averted to earlier was the comparable legislative history was before the Supreme Court in the international paper case. And what they said as to source State law, and it's footnote 20, which I think is where it's clearest, is that you still have to apply ordinary conflict principles. And the other thing I think that's worth noting about international paper is they specifically said you can't overread the savings clause in the citizen suit provision. If that had been, in fact, the law when AEP was decided, why did they expressly say in AEP that issue is not before us and that is an open issue? See, I actually think the remand for that works in my favor, because I think the remand on that issue is actually inconsistent with what the district court did here. But that's not the question. The question is if they had already resolved the issue by the footnote in Ouellette, why didn't they just say so? Well, because what they said in the footnote is consistent with the remand, which is they said that ordinary conflict principles still apply. And I think what they envisioned is you would have to do something of a case-specific analysis, and I think that's exactly what they remanded for. If the world were as simple as source State versus non-source State, they went ahead to remand. But there were common law claims in that case. I think they were, at least some of them were source State common law claims, so they remanded for the preemption analysis. And that can be ---- And then you would tack on to that preemption analysis that it is dependent upon the permitting process. Exactly. And I think in a case like that, to pick up on something Judge Rogers said, if in the process of trying to figure out what the State common law looked like, you replicated every problem that the Court had averted to for Federal common law so that you were ---- nobody knew what the carbon dioxide standard was and it was just a morass, you might find it conflicted there. On the other hand, if there was some, you know, way to get to the right answer under the State common law that avoided those problems, then there wouldn't be a conflict. But I think that ---- And those ---- and those litigations would go forward independently of the permitting process. Well, I don't know that they would go forward. But could, under your argument, could. Correct? I don't think so, because I think ultimately an important ingredient of whether or not there's a conflict is whether you run it through the permitting process or whether it's collateral to the permitting process. So ultimately, everything would have to be run through the permitting process under your argument. Yeah. And I actually think that's the best way to reconcile AEP and international paper, because if everything's run through the permitting process, then you don't have this parallel track that the Court was talking about. You don't have individual judges and juries second-guessing the determinations of the expert regulators. So I think if you're trying to make sense of both international paper and both halves of it and AEP, that's actually the result that makes the most sense. Thank you, counsel. Thank you, courts and judges. The case has been submitted. I appreciate your coming to Lexington. You can adjourn the Court. The Honorable Court is now adjourned.